RAYNER, *administrator, &c.* of SEARING and others, *against* PEARSALL and others.

An assignee of an executor or of the administrator of an executor, cannot be called to an account by the legatees, where there is no fraud or collusion, even though the assets could be traced and identified.

Where an executor put bonds and notes, due to the testator, into the hands of an attorney to collect, and after the death of the executor, the attorney collected the money and applied it to his own use, and became insolvent: *Held*, that

the estate of the executor was not chargeable with the loss, especially after a lapse of more than six years.

Where the administrator of an executor, in his answer to a bill filed by the representatives and legatees of the testator, for an account, &c., sets forth an account, and avers that he had fully administered, &c., and had distributed the surplus, being a trifling sum, the court refused to order a reference to a Master for a further account, especially after a lapse of twelve years.

1818.

RAYNER
v.
PEARSALL.

*JOHN SEARING* made his will on the 29th of *March,* September 30th, 1795, and appointed *William Pearsall,* and three other and November persons his executors. The testator died in *October,* 1797, and the will was proved by *Pearsall,* who qualified as executor, the other persons having refused to act. After giving several specific and pecuniary legacies, the testator directed his estate to be divided into *four* parts, and gave one fourth of the same to the children of *Joseph Baldwin,* one fourth to *Willet Rayner,* one fourth to the children of *George Van Kleeck,* and one fourth to the children of *Elizabeth Hicks.* *Willet Rayner,* the children of *George Van Kleeck,* deceased, and the children of *Elizabeth Hicks, residuary legatees,* mentioned in the will, are the plaintiffs in the suit. The bill charged that the executor *P.* collected part of the debts, and sold part of the personal estate, which amounted to more than the pecuniary legacies, and sold part of the real estate; that the testator left a large real and personal estate, which did, or might, if not for his negligence, have come to the hands of the executor, a schedule of which was annexed. That the executor died intestate, in 1803, leaving a large estate, without having paid the legacies, &c., except the bequests to the widow. That *Mary Pearsall,* the daughter of the executor, administered on his estate, and possessed herself of a large part of the real and personal estate of the testator, and of his books of account, &c., and afterwards married *John Woolley,* (defendant,) and died in *February,* 1816, intestate; that *W.* possessed himself of the real and personal estate of his wife, and of a great proportion of the estate of *S.,* the testator, and has not administered on his

wife's estate, nor on the estate of her father *W. P.*, nor had he or his wife paid the legatees under the will of *S.*, &c. That in *July*, 1868, the defendant, *Lavinia Pearsall*, widow of *W. P.*, deceased, took out letters of administration *de bonis non*, &c., of the executor of *S.*, and possessed herself of the real and personal estate, or the proceeds thereof, of *S.*, and of his books of account, &c., and also of the personal estate of *W. P.*, the executor, but had not accounted, or paid to the legatees, their legacies, &c., but had put the estate, books, &c., into the hands of the defendant, *Charles Rapelyeu*, who had married her daughter *Catharine*, who held the same, without accounting to the plaintiffs or the other legatees of *S.* That the surviving executors of the testator, *S.*, having renounced, and his widow having also renounced her right to administer, administration, with the will annexed, was granted to the plaintiff, *William Rayner*, one of the residuary legatees.— That the children of *Joseph Baldwin*, who are the other residuary legatees, with their father, reside out of the state, and it was unknown whether they were living or dead. *Prayer*, that the defendants may account, &c., and be decreed to deliver or pay to the plaintiffs the real and personal estate of the testator *S.*, or the proceeds thereof, remaining unadministered by *W. P.*, &c., and to deliver the books of account, deeds, &c., relating to the estate of *S.*, to the plaintiff *Rayner*, &c., and for general relief.

*Woolley*, in his answer, stated, that he delivered up to *Lavinia P.* all the assets which his wife left, as administratrix of *W. P.*, except one third of the furniture, which *Lavinia*, as administratrix, delivered to him, and personal property of *W. P.* to the value of 32 dollars and 71 cents, and that all that property, now in his hands, does not exceed the value of 160 dollars; and he denied that he ever had any other property of *W. P.*, or any part of the estate of *S.*

The defendant, *Lavinia P.*, in her answer, admitted that
*W. P.* was the acting executor of *S.*, and sold the real
and personal estate of the testator, and collected some of
the debts ; that in 1799 he sold a farm and meadow, which
was all the real estate, for 3,000 dollars ; that the personal
estate, except what was bequeathed, was sold at auction,
in *October*, 1797, and *November*, 1798, and produced 735
dollars and 98 cents; and that the plaintiff *R.* purchased
to the amount of 118 dollars and 12 cents, which he has
not paid. That the schedule referred to in the bill was
not correct; and the whole of the property specified did
not come to the hand of the executor. That the bonds and
notes there mentioned, were, in 1799, and 1802, put into
the hands of an attorney, *A. Skinner*, for collection, and no
part of them has been received by the executor, or by his
administratrix *M. P.*, or by the defendant. That the
money due on the bonds and notes was, afterwards, paid
to *Joseph Winter*, an attorney ; and the plaintiff as admi-
nistrator of *S.*, sued *Winter*, and recovered a verdict, in 1813,
for 2,302 dollars, and 51 cents ; and that the plaintiff
ought to look to *Winter*, or the persons who paid him the
money, and not the estate of *W. P.* That a note of *W.
H.* for 60 pounds, 7 shillings, and 8 pence, and a note of *S. L.*
for 12 pounds, which could not be collected, are now in the
hands of the defendant. Two other notes were assigned
to the widow of the testator as part of her legacy. That
according to the statement made to the defendant by *A.
Skinner*, the executor, *W. P.* recovered 50 pounds in
1797, on *R. Morrel's* bond ; and in 1798, 70 pounds for
rent. That the defendant knows no more of the assets of
the testator; and denies all negligence in the executor,
who died the 20th of *May*, 1804, intestate. That neither
the executor nor his daughter, after his death, ever took
possession of the assets of the testator. That she, as ad-
ministratrix of *W. P.*, collected some moneys due to him,
and paid some debt leaving a balance in her hands of 81

1818.

RAYNER
v.
PEARSALL.

dollars, and 8 cents, besides some furniture, of the value of 140 dollars; that she left furniture to the value of 70 dollars, with W., as the proportion of his wife, the daughter of W. P. That after deducting 25 dollars for her services, the defendant paid the residue of the 81 dollars, and 8 cents, which were all the remaining assets of W. P., to the the defendant R., who had married the only surviving child, and to whom, also, she delivered the furniture, valued at 140 dollars, half of which had since been returned to her. That, as appeared from receipts in her possession, W. P., as executor, had paid 3,265 dollars and 38 cents, of which a schedule was annexed; and had retained 37 dollars and 59 cents, for his own debt, and 214 dollars, 72 cents for moneys expended, as executor, also, 250 dollars for a legacy to him and his brother, and 250 dollars given to him conditionally, the condition having happened. The defendant denied that the plaintiff had ever demanded an account of the administration of *Searing's* estate; and she insisted, that considering the lapse of time since the death of *S.*, *W. P.* and *M. P.*, she was not bound to render any further account.

The defendant *R.* admitted the receipt of 56 dollars, and 8 cents, in money, and the furniture which he received of *Lavinia P.*, in part of the estate of *W. P.* in right of his wife, the daugther of *W. P.*; and he denied all knowledge of the estate of the testator *S.*, and that he ever received any part of it, or of the proceeds, or was ever requested to give any account respecting it.

*September 30th.*     *T. A. Emmet*, for the plaintiffs.

*Wells*, and *J. Riker*, for the defendants.

*November 11th.*     THE CHANCELLOR. There does not appear to exist even the shadow of a right of action against the defendant *Rapelyea.* He married, in 1814, a daughter of *Pear-*

sall, the executor, who had been dead ten years, and he received from his mother-in-law a few dollars in money, and some trifling furniture belonging to the estate of *Pearsall,* and of which estate she was only an administratrix of assets unadministered by the former administrator. There is no real pretension of any collusion between him and any person represecting the estate or assets of *Searing.* The complainant *Rayner* was the personal representative of *Searing,* when the defendant *R.* married into the family of *Pearsall.* The defendant *R.* did not receive the furniture and cash of *Lavinia Pearsall* as being part of the estate of *Searing.* There is no proof of such an allegation, or that he had any reason to suspect any connexion between what he received, and the assets of the estate of *Searing.* There is no such identity traced, or pretended, in the property he received. The defendant *R.* was, therefore, brought into court without any reasonable cause. It would be most inconvenient, if not unjust, to pursue assets in this way, through successive hands, or a sequel of transfers, when no fraud or collusion exists, *even if the assets could be traced and identified.* There must be collusion to make the assignee of an executor, and, more especially, the assignee of an administrator of the executor, liable to the legatees of the testator. This is the principle to be found in the books. (*Newland* v. *Champion,* 1 *Vesey,* 106. Lord *Hardwicke,* in *Simpson* v. *Vaughan,* 2 *Atk.* 33., and 2 *Vesey.* 469.

The bill as to the defendant *Rapelyea* must, therefore, be dismissed, with costs.

We come next to consider the case of *Lavinia Pearsall,* the administrator *de bonis non* of *Pearsall,* the executor of *Searing,* and the principal question in the case is, how far *Pearsall* was personally responsible at his death.

*Wm. Pearsall* had been the acting executor of *Searing,* from *October,* 1797, to *May,* 1804, when he died, and it is

not until *May*, 1816, or 12 years after his death, that this suit is brought against his personal representative, and who may be considered as a representative in the second degree. Every intendment ought to be made in favour of the executor who has been so long dead, and when his immediate administrator has been dead for upwards of ten years before the filing of the bill.

A principal matter in contest, is respecting certain bonds and notes which *Pearsall*, the executor, in 1799, put into the hands of *Skinner*, an attorney, for collection. The attorney says, that suits were brought upon these bonds and notes and he can give no further account of them, except that some time after the death of *Pearsall*, he delivered most of them over to *Winter*, another attorney. They were collected, or the money received by *Winter*, to the amount of 1,700 dollars, who appropriated it to his own use, and became insolvent. The present plaintiff, *Rayner*, has sued *Winter* for the moneys so collected, and obtained a verdict against him ; and he now seeks to charge the estate of *Pearsall* with that loss, on the ground of negligence in *Pearsall*. But the facts and circumstances of the case do not appear to afford any sufficient reason for charging the estate of *Pearsall* with the loss of the money so recovered and appropriated by the attorney. There was no insolvency of the original debtors. The debts were secure at the death of *Pearsall*. The debtors were then competent to pay, and they did, afterwards, pay to the attorney. The loss arises from the act of the attorney, long after the death of the executor, and the estate of the executor ought not, surely, to be charged for such subsequent defalcations. It is only responsible for plain and strong acts of negligence or misconduct imputable to the executor himself. There does not appear to have been any pressing necessity for the immediate collection of the debts. The executor acted with reasonable and ordinary discretion and care. He left the debts secure, and it was

not until six years after his death, that the moneys were received by an attorney, who abused his trust. The plaintiff, *Rayner*, may charge the loss more properly to his own negligence, in not taking out letters of administration upon the estate of *Searing*, until seven years after the death of *Pearsall*. He might at any time have compelled the surviving executors of *Searing* to act, or to renounce.

If the debts collected and wasted by *Winter*, be put out of the case, it is very evident, that *Pearsall's* estate has nothing for which it ought justly to be accountable to the plaintiffs, provided the list of payments annexed to the answer of *Lavinia Pearsall* be correct. She avers, in her answer, that they are all supported by "receipts taken in a book, and on small detached pieces of paper, now remaining in her possession." This being matter set up in defence, or by way of avoidance, must be proved; yet, I observe, that in the statement by the plaintiff's counsel of the balance he claims, this schedule of payments by *Pearsall*, the executor, is assumed to be correct. If it be so, there is an end to the claim, supposing *Pearsall's* estate not to be chargeable with the moneys collected and misapplied by *Winter*.

The case, at last, resolves itself into this point, whether it be necessary or discreet to subject the defendant *Lavinia P.* to the trouble and expense of accounting, by proving all those receipts taken by the executor, considering the obscurity and difficulty which the lapse of time must have thrown over the transactions. The perplexity and hardship of accounting is greatly increased in the case of an administrator *de bonis non* of an executor of the assets sought to be recovered. There is very good reason to believe, from an attentive examination of the pleadings and proofs, that no balance could be found due from the estate of *Pearsall*, even if an account was to be decreed.— And if that should happen to be the case, there is another serious difficulty in the way. *Lavinia Pearsall* avers, that

she has duly administered the estate of *Pearsall*, left un-administered by the prior administrator, and that she had distributed the small surplus of assets, after payment of the debts, which surplus would hardly pay the expense of the reference. It was only 81 dollars, exclusive of some furniture distributed among the representatives of *Pearsall*.

The plaintiff *Rayner*, who administered upon the estate of *Searing* in 1811, waited five years, and suffered this distribution of the estate of *Pearsall* to be made, before he filed his bill, and he now calls upon *Lavinia P.* to account for the administration of *Pearsall*, as well as of her own, twelve years after his death.

In *Ray* v. *Bogart*, (2 *Johns. Cas.* 432.) the Court of Errors confirmed a decree of this court, dismissing a bill for an account, by reason of delay and lapse of time, and the death of parties, and the probable loss of papers, though the real *laches* in that case was only for eleven years. The case of *Sturt* v. *Mellish*, (2 *Atk.* 610.) is a strong one to show the unwillingness of the court to decree an account, when the transactions have become obscure and entangled by delay and time. There is no certain and definite rule on the subject. Each case must depend upon the exercise of a sound discretion arising out of the circumstances.— My conclusion is, that in this case it would be oppressive, and without any beneficial result to either party, to order an account to be taken; I shall, accordingly, dismiss the bill as to the defendant *Lavinia P.*, without costs.

Decree accordingly.