H. S. GEORGE, ADMR. OF ESTATE OF LEWIS F. EATON v. ELIJAH JOHNSON, IN EQUITY.

Where all the heirs beneficially interested in the estate of a deceased person, being of age and otherwise capable, agree upon a board of arbitrators to adjust for themselves the affairs of the estate, and the arbitrators hear the parties in relation to all matters in dispute, and make their award in the premises, and the parties proceed to settle among themselves according to the terms of said award, a court of equity will not go behind the award or open the accounts examined by the arbitrators, unless in cases of manifest mistake, fraud or misconduct of the arbitrators, or some party to the settlement.

Generally, a court of equity will not open an account by their decree, after six years of delay unaccounted for.

THE alleged object of this bill in equity was to effect a settlement of the company affairs of the late firm of Johnson & Eaton. From the bill, answer and evidence filed in the case, we derive the following leading facts :    That, as early as A. D. 1834, the defendant Johnson and John Q. Eaton and Lewis F. Eaton formed a copartnership for the purpose of carrying on the business of carriage-making in the town of Weare in this State ; the said Johnson to derive one-half of the profits of the firm, and the two Eatons, the other half.    In this way the business of the firm was conducted until it was dissolved by the death of John Q. Eaton, which occurred on the 4th day of July, A. D. 1845. The interest of said John was afterwards sold by his legal representatives to his surviving brother, Lewis F. Eaton.    The partnership then continued in the name of Johnson & Eaton, to December, A. D. 1846, when it was dissolved, and the defendant Johnson removed to Manchester.    On the 28th day of January, A. D. 1848, the said Lewis F. Eaton died without children, and intestate, leaving, as representatives, his widow Cassan D. Eaton, his mother Jane Eaton, his brother Jeremiah S., and three sisters, viz : Mrs. Elvira J. Dow, Mrs. Lavina A. Johnson wife of defendant, and Mrs. Helen M. Preble wife of Thomas M. Preble.

The defendant alleges in his answer, that, after the decease of said Lewis, the heirs met, and agreed that the defendant and said Thomas M. Preble should go on and finish up the work, and settle up the share of said Lewis.    The parties met for this purpose, but could not agree upon the terms ; but it was finally agreed to refer all matters in controversy between the estate of said Lewis and the defendant, to three arbitrators.    Accordingly, on the 30th day of March, A. D. 1848, an arbitration bond was signed and executed by said Johnson, Cassan D.

Eaton, and Thomas M. Preble, under and by which the said parties bound themselves, as liquidated damages, in the penal sum of one thousand dollars, to submit all matters in controversy to the award and final determination of Moses Peaslee, Amos Chase and Alfred Hamilton, the award of whom or of a majority of the same to be final and conclusive between the parties.

On the same 30th day of March, the said arbitrators, after due notice, met and heard the parties at the house of said Preble, as to all matters in dispute, and made and published their award in the premises. The said Preble on his part representing the interests of the estate of said Eaton, the arbitrators proceeded to appraise the estate of said Lewis at $3075.78 ; and deduct the debts due from the same, amounting to $1809.20, leaving a balance of $1266.58. They assigned from this balance one hundred dollars to widow Jane Eaton, the mother of the deceased, and to the four heirs, $560, leaving the further balance of $606,-58, which is assigned to the widow Cassan D. Eaton, upon the condition that she pay all expenses of settling the estate, and all demands, whether notes or accounts, contracted since the death of Lewis F. Eaton ; said award being dated April 5, 1848. And it appears further, that the said award was duly complied with ; the said heirs at law, viz, Dow and wife, and Jere. S. Eaton, severally releasing their right to the estate of said Lewis to the said Cassan, and the defendant also releasing his interest to her. Afterwards the said Cassan and Jane conveyed their several rights or shares to said Preble, and thus all the interests which said Lewis had, became united in said Preble.

The evidence showed that the arbitrators were called together the second time at the special request of said Preble, which was about the first of April, A. D. 1849, and some debts, which were not considered at the first meeting, were then considered and adjusted, but no new written award was then made. And it appeared that no claim was made, or dissatisfaction was expressed with the proceedings of the arbitrators, until about February 1862, when said Preble procured the appointment of the administrator and in his name brought this bill before this Court.

*L. T. Flint*, for plaintiffs.

*D. Steele, Eastman & Cross*, for defendant.

Nesmith, J. Now, it appears to us, that, under the action of the heirs to the estate of said Lewis F. Eaton, in agreeing to the appointment of arbitrators, and in submitting the matters then in dispute to their decision, and procuring an award upon the merits of the same, and especially by accepting the report of said arbitrators, and ratifying the same by the execution of releases or discharges in conformity with its provisions, the plaintiff, as the representative of said heirs, is now placed in such position, that he cannot disclaim the acts of those he represents, unless some manifest and material mistake, or some fraud or corruption has been discovered. The equitable rule laid down in *Hibbard*

v. *Kent*, 15 N. H. 519, applies here. If all the parties, beneficially interested in the estate, adjusted and settled their interests in it, and if there be no mistake or fraud, the settlement is binding, and none of them by procuring administration can be permitted to defeat such settlement.

Under the wise provisions of the preceding decision, if the heirs to an estate, being of age, and all mentally capable, shall actually undertake to adjust their several claims, and ascertain their respective shares and liabilities without the expense of a formal administration, each receiving his share, all executing legal and proper discharges or indemnities, it would be very mischievous, if any one might at his mere pleasure set aside and defeat what has been done for the mutual advantage of all. Where an attempt is made to break up a settlement made under such circumstances, very strong evidence must be produced by him who attempts to disturb it, that positive injustice has been inflicted upon him. In cases of fraud, when an administrator has been appointed, the proper course for the party defrauded would be to deliver up whatever property he may have received to the administrator, in order that there may be a legal or more equitable division of the whole fund. In the case before us, the defendant had authority by law, as surviving partner of the firm of Johnson & Eaton, to adjust all the affairs of the late firm. It was competent for Johnson to waive his rights, and, by the very course adopted, to call in to his aid the services of those capable and willing to examine into the accounts, business and property of the firm, as well as its liabilities, and, in this way, to divide the capital and income of the said firm among those entitled to take a dividend. And, although all the heirs of Lewis F. Eaton may not have signed the original submission in this case, yet, after a hearing upon the matters submitted has once been had, and the heir who has omitted to sign the original submission voluntarily accepts the amount awarded to him, he is bound by this act and is estopped from averring against it, unless, as before suggested, upon the discovery of manifest mistake or fraud. 2 Story's Equity, secs. 1452 and 53 ; *Tracy* v. *Herrick*, 25 N. H. 381.

It is enough to say, that, upon the full examination of all the evidence in this case, we do not find fraud made out ; nor do we find misconduct or undue partiality in the tribunal selected by the parties to try their matters in controversy. Two of the arbitrators were neighbors and relatives of the parties. Their character, capacity and partialities were known as well by the one side as the other before they were selected to settle the matters in dispute. The plaintiff, in his testimony, has undertaken to suggest some errors or omissions, or that the arbitrators had not before them certain claims now presented. These are not large in amount, nor is the evidence at all conclusive that they were not examined or weighed by the arbitrators. The difficulty now is, that, after so long a time, and from the imperfect records left by the arbitrators, and, we may add, in consequence of the death of some who might, if living, give light and information, it is now impossible to determine with strict accuracy just what the arbitrators embraced in their award. The award of the arbitrators has been in the possession of Mr. Preble for a long

time, or it has been accessible to him, and he has also had opportunity to consult the old company books and their other records. The defendant, for a long time, has had no claim made upon him by Preble, or any one interested, and it appears to us, it is now quite too late to disturb the slumbers of a case which has been suffered to rest so long. We think this is a case where the statute of limitations may properly interpose its bar.

The claim now made can be justly regarded as stale. Courts of equity sometimes act by analogy to the courts of law, and apply the statute of limitations to the facts of the case; and sometimes act upon their own inherent power of discouraging for the peace of society antiquated demands, and refuse to interfere where there has been gross negligence in prosecuting rights, or long acquiescence not accounted for. We are aware that courts of equity are not necessarily bound to apply the statute of limitations, but generally they will decline to decree an account, where the transactions have become obscure and entangled by time. *Rayner* v. *Pearsall*, 3 Johns. Ch. 578; *Rayor* v. *Bogart*, 2 Johnson's Cases, 432.

In *Smith* v. *Clay*, Ambler's Reports, 645, Lord Camden remarks: "A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his right for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these principles are wanting, the court is passive and does nothing." In 3 Hare's Reports, 347, Chancellor Wigram says: "In this court there is direct and high authority for the proposition that a court of equity will not after six year's acquiescence, unexplained by circumstances, or countervailed by acknowledgment, decree or open an account between a surviving partner and the estate of a deceased partner." Generally a court of equity will not open an account by their decree after *six* years of *delay*, wholly unaccounted for. 2 Story's Equity, in note to section 1520; *Barber* v. *Barber*, 18 Vesey, 286; *Auld* v. *Goodrich*, 4 Russ, 430; 15 Viner Abridg. Title, Limitations; *Martin* v. *Heathcote*, 2 Eden Rep. 169; *Atwater* v. *Fowler*, 1 Edwards' N. Y. Rep. 417; *Platt* v. *Bouchard*, 4 Id. 30. By recent statute in the State of New York, it is ordained that actions for relief on the ground of fraud, of solely equitable cognizance, should be brought within six years after the discovery of the fraud—Code of Procedure, section 91; actions for other relief not otherwise provided for, ten years. Same Code, section 97.

In this State, we have no statute applicable here except the statute of limitations, and, under the facts and evidence presented before us, we see no reason why the plaintiff should be permitted to open the old company accounts, which have reposed so quietly for the period of more than twelve years. Therefore our decree is,

*That the bill be dismissed.*