(158 App. Div. 704.)

### HUTCHINSON v. SPERRY.

(Supreme Court, Appellate Division, First Department. November 7, 1913.)

1. PARTNERSHIP (§ 336*) — ACTION FOR ACCOUNTING — SUFFICIENCY OF EVIDENCE.

   In an action by a member of a partnership for an accounting, evidence *held* insufficient to show that the partnership, when it assigned all its business in certain states to a corporation, was carrying on business in states other than those covered by the assignment, with the exception of one state, the business in which it shortly thereafter disposed of.

   [Ed. Note.—For other cases, see Partnership, Cent. Dig. § 797; Dec. Dig. § 336.*]

2. PARTNERSHIP (§ 263*)—DISSOLUTION—ACTS CONSTITUTING.

   Where a partner not only ceased to take an active part in the business and withdrew himself from all participation in its affairs, but united with his copartner in forming a corporation to take over the partnership business and in transferring to it all the assets and business of the partnership, and for ten years never performed any act or made any claim indicating that he considered the partnership to be still alive, the partnership would be treated as having been dissolved when its last remaining asset was disposed of, notwithstanding the general rule that a partnership at will continues until dissolved by the act of one or both of the parties and that the mere retirement from active participation in the affairs of a partnership is not of itself an abandonment and dissolution thereof.

   [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 600–602, 607; Dec. Dig. § 263.*]

3. PARTNERSHIP (§ 321*)—ACCRUAL OF CAUSE OF ACTION—PARTNERSHIP ACCOUNTING.

   Where a partnership transferred all of its business and assets to a corporation, there being no occasion for a liquidation of its affairs, the right of a partner to demand an accounting accrued immediately and was barred by limitations in ten years from that time.

   [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 742–745; Dec. Dig. § 321.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. PARTNERSHIP (§ 321*)—ACCOUNTING—LACHES.

Where a member of a partnership withdrew from its affairs and joined with his copartner in transferring its business to a corporation organized by them, and for ten years made no claim to an accounting and acquiesced in all that his copartner did upon the faith of the transfer and his abandonment of all interest in the business, his acts amounted to laches justifying a court of equity in denying an accounting, even if the statute of limitations was not strictly applicable.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 742–745; Dec. Dig. § 321.*]

5. PARTNERSHIP (§§ 313, 321*)—ACCOUNTING—LACHES.

A partner's action for an accounting is essentially one of equitable cognizance both in form and substance, and hence the relief sought may be denied for laches.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 679, 729, 729½, 742–745; Dec. Dig. §§ 313, 321.*]

6. APPEAL AND ERROR (§ 1176*)—DISPOSITION OF CAUSE—RENDERING FINAL JUDGMENT.

On reversal of a judgment for plaintiff, where it appeared that all the essential facts were developed at the trial and that there were no facts beyond those in the case which would avail to meet the objection to a recovery, the complaint would be dismissed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4588–4596; Dec. Dig. § 1176.*]

Appeal from Special Term, New York County.

Action by Shelley B. Hutchinson against Thomas A. Sperry. From an interlocutory judgment (79 Misc. Rep. 523, 140 N. Y. Supp. 220) dissolving a partnership and appointing a referee to take an account, defendant appeals. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Morgan J. O'Brien, of New York City, for appellant.
Edw. Herrmann, of New York City, for respondent.

SCOTT, J. In January, 1897, plaintiff and defendant, with one Jackson, organized the copartnership of Sperry & Hutchinson for the purpose of carrying on the trading stamp business. Jackson afterwards dropped out, leaving only plaintiff and defendant in the firm. The partnership agreement was oral and was to continue at will; no time being set for its termination. The firm began business at once and extended it to a number of states. In November, 1897, plaintiff and defendant, together with Wm. M. Sperry, a brother of defendant, R. J. Alexander, and A. E. Wiedenbach, organized a corporation known as the International Trading Stamp Company with a capital of $100,000. Sperry & Hutchinson agreed to turn over to this corporation the trading stamp business in certain states and cities for 635 shares of the capital stock, which was divided equally between them. The balance of the stock was assigned to the other incorporators for the assignment of territory covered by them. Thereafter plaintiff and defendant acquired all the stock of said company as equal partners. It is not made entirely clear how extensive a territory was covered by this company, but it appears that its operations went

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

far beyond New Jersey, the state of its incorporation, and it certainly extended into New York state. Among other places, it did business in Atlanta, Ga. This business seems to have sold out to one Connant in July or August, 1899, and did not pass to the firm of Sperry & Hutchinson, by the sale hereafter mentioned. In September, 1899, the International Trading Stamp Company sold all of its business, assets, and good will to the copartnership, which assumed payment of its debts, and in January, 1900, the said company became formally and legally dissolved.

[1] In October, 1900, a corporation was organized under the laws of the state of New Jersey, under the name of the Sperry & Hutchinson Company, to take over and carry on the business of the copartnership, and plaintiff and defendant each subscribed for 4,985 shares of the stock, taking together 9,970 out of the 10,000 shares of the stock, and on October 25, 1900, plaintiff and defendant assigned to the corporation all the business then carried on by them in the following states, New Jersey, California, Ohio, Indiana, Pennsylvania, Connecticut, Rhode Island, and Illinois, together with all the assets, good will, etc., appertaining to said business. Much is made by respondent of the limited number of states enumerated in this assignment, from which it is sought to draw the inference that there must have been business going on in other states at this time, and consequently that the firm retained a part of its business and sold only a part of it to the corporation. Excepting as to the state of Michigan (of which more hereafter), I am unable to find any evidence in the case to support the finding that at the time of the transfer to the corporation the copartnership carried on business in any state except those enumerated, and a competent witness, Miss Hirsh, the principal bookkeeper both of the copartnership and of the corporation testified positively that the assignment carried with it all the business then conducted by the partnership except in Michigan, and that after the assignment the copartnership carried on no business anywhere save in Michigan.

It is true that there are exhibits apparently showing that in 1898 the International Company had carried on a business in six states, excluding Michigan, not specifically covered by the bill of sale; but, as certain other exhibits show, the business was threatened about this time with much adverse litigation in numerous states, and it is a matter of public record that from September, 1900, to May, 1902, there was in force in this state a statute forbidding the transaction of business of this character. Laws 1900, c. 768, taking effect September 1, 1900; People ex rel. Madden v. Dycker, 72 App. Div. 308, 76 N. Y. Supp. 111. I conclude therefore that, save as to Michigan, there is no evidence in the case that the firm of Sperry & Hutchinson reserved any of the business which it carried on prior to October 25, 1900, the date of the assignment to the corporation. The only positive evidence is to the contrary. The Michigan business, which was reserved out of the assignment, apparently for sentimental reasons, was sold in July, 1901, to the firm of Witherbee & Hyatt, at the price of $12,000, under a contract which provided for payment by

October 1, 1901. Plaintiff was notified of this sale and asked that his share of the proceeds be paid over to him. Defendant refused to do this and notified plaintiff that it would all be paid over to the corporation. Plaintiff seems to have acquiesced in this at the time. About July 24, 1901, plaintiff sold all of his stock in the corporation, and on August 3, 1901, he left New York and went to Ypsilanti, Mich., where he has ever since resided and still resides, having engaged in other business there. The Michigan sale was fully consummated in November, 1901. The corporation paid debts of the copartnership greatly exceeding in amount the sum received from the sale of the Michigan business.

At no time between July, 1901, and immediately before the commencement of this action did plaintiff ask for any statement, settlement, or accounting. During all that period he has concerned himself in no way in the business formerly conducted by the copartnership.

The complaint asks specifically for an accounting of the sale of the Michigan business, of the sale of the business in Atlanta, and generally of the copartnership business. The defendant relies: (1) On the ten-year statute of limitation; (2) on plaintiff's laches.

Our examination of the case leads us to the following conclusions:

1. That the so-called Atlanta business never passed to the copartnership, but was sold by the International Company before its sale to the copartnership.

2. That there is no evidence that the copartnership owned or carried on at the time of the assignment to the corporation or carried on after the time of the assignment to the corporation any business except that specifically covered by the assignment, save only Michigan. That the evidence is all to the contrary.

3. That if the copartnership did in fact then own and carry on any other business, the practical construction given to the assignment by all parties, if not the language of the assignment, was that all its business was assigned.

4. That the only excepted territory, to wit, Michigan, was completely sold, disposed of, and paid for in November, 1901.

5. That by the transfer of all its business and property in 1901, and the abandonment of the copartnership business by both parties at the time, the copartnership was, by operation of law, dissolved.

6. That the evidence is convincing that since November, 1901, the copartnership has transacted no business whatever.

The action was not begun until May, 1912.

[2] Upon these facts we think it quite clear, as matter of law, that the copartnership was dissolved in November, 1901, when its last remaining asset was disposed of, and after plaintiff having disposed of all his interest in the business had retired from it. It is quite true, of course, as was said in Spears v. Willis, 151 N. Y. 449, 45 N. E. 849, referred to by the learned justice at Special Term, that a partnership at will continues until dissolved by the act of one or both of the parties, and that the mere retirement from active participation in the affairs of such a partnership is not of itself evidence of an

abandonment of the partnership and a dissolution thereof. The circumstances of that case were peculiar and fully justified the conclusion at which the court arrived that the copartnership had never been dissolved, and if there were no other fact in this case than that plaintiff in 1901 ceased to take any active part in the business, and withdrew himself from all participation in its affairs, there would be some analogy to the authority above cited. The controlling fact in this case is that, besides severing his active connection with the business, the plaintiff united with defendant in forming a corporation to take over the business of the copartnership and in transferring to that corporation all the assets and business of the copartnership, and for more than ten years after such transfer never once performed any act or made any claim indicating that he considered the copartnership to be still alive. These facts present convincing and unequivocal evidence that it was the understanding and intention of both plaintiff and defendant that the copartnership should cease to exist when it finally disposed of all its business and assets, to a corporation in which each partner acquired an equal interest. Francklyn v. Sprague, 121 U. S. 215, 7 Sup. Ct. 951, 30 L. Ed. 936; Coggswell & Boulter Co. v. Coggswell (N. J. Ch.) 40 Atl. 213.

[3] We are of opinion that, under the circumstances stated, the ten-year statute of limitation is a complete bar to the action. Gilmore v. Ham, 142 N. Y. 1, 36 N. E. 826, 40 Am. St. Rep. 554; Gray v. Green, 125 N. Y. 203, 26 N. E. 253. Since the corporation took over all the business and assets of the copartnership as a going concern, there was no occasion for a liquidation of the affairs of the copartnership, and no time need to have been allowed for such liquidation before plaintiff's right to demand an accounting accrued.

[4, 5] And even if the statute of limitation were not strictly applicable, we should be of the opinion that plaintiff by his long silence and acquiescence in all that was done by defendant upon the faith of the transfer and abandonment by plaintiff of all interest in the business would amount to laches sufficient to justify a court of equity in refusing to grant relief, for an action of this character is essentially one of equitable cognizance both in form and substance. Calhoun v. Millard, 121 N. Y. 69, 24 N. E. 27, 8 L. R. A. 248; Rayner v. Persall, 3 Johns. Ch. 578; Ray v. Bogart, 2 Johns. Cas. 432. The recent case of Pollitz v. Wabash R. Co., 207 N. Y. 113, 100 N. E. 721, holds nothing to the contrary. Although it was in form an equitable action, it was in fact and in substance an action to recover damages at law, and assumed the guise of an equity suit only because it was a representative action by a stockholder in the right of a corporation. In order to obtain a standing to sue, the plaintiff was obliged to resort to equity; but, once having obtained that standing, his rights were determinable by legal rules.

[6] The conclusion at which we have thus arrived necessitates not only a reversal of the judgment appealed from, but a dismissal of the complaint, since it is apparent that all the essential facts were developed at the trial, and there are no facts, beyond those now in the case, which would avail to meet the objection which we find to

a recovery by the plaintiff. Under the present practice it will be necessary to reverse some of the findings at the Special Term and to make new findings. What findings should be reversed and what new findings made can best be determined upon the settlement of the order.

Judgment appealed from reversed, and complaint dismissed, with costs to the appellant in all courts. Settle order on notice. All concur.