BANKERS TRUST COMPANY and ANN TREADWAY MARSTON, as Executors, etc., of EDGAR L. MARSTON, Deceased, Respondents, *v.* JOHN B. DENNIS, Appellant.

First Department, March 17, 1939.

*Nathan L. Miller* of counsel [*Edward C. Bailly, Edward J. Bennett* and *Francis B. Delehanty, Jr.,* with him on the brief; *Miller, Owen, Otis & Bailly,* attorneys], for the appellant.

*J. Adam Murphy* of counsel [*Theodore L. Bailey, Arthur E. Muller* and *William Killoran* with him on the brief; *White & Case*, attorneys], for the respondents.

DORE, J. Plaintiffs, executors of Edgar L. Marston, deceased, former member of a partnership dissolved in 1920, instituted this action in 1936 for an accounting by defendant, one of the other two former partners of the dissolved firm. The third partner was not joined as a party to the action as he had made settlements with defendant and plaintiffs' testator. The transactions were multifarious, involving large sums of money, but the ultimate issue for our determination is whether plaintiffs' cause of action is barred by the Statute of Limitations.

The former partnership, Blair & Co., composed of C. Ledyard Blair, defendant John B. Dennis, and plaintiffs' testator, Edgar L. Marston, had been engaged for some years prior to April, 1920, in an investment and banking business. Under the partnership agreement the shares of the three partners in capital, profits and losses were: Blair, forty-eight per cent; Dennis, thirty per cent; Marston, twenty-two per cent. On April 5, 1920, the partnership ceased doing business and was dissolved by mutual consent of the partners.

On that date, by written agreement between the partners and a new corporation called Blair & Co., Inc., the going business (other than the banking business) theretofore conducted by the partners was transferred to Blair & Co., Inc., which acquired the old firm's office building at 24 Broad street, its business, good will, employees' contracts, certain deposit accounts, customers' accounts and securities. In return, Blair & Co., Inc., agreed to pay the partners $2,000,000 cash and additional substantial sums for certain specified securities and bills receivable and to assume liability on the deposit accounts taken over. A memorandum, dated April 5, 1920, showed performance of this agreement and the partners' paid stock subscription of $2,000,000 for the preferred stock of Blair & Co., Inc.

At the same time another corporation was organized under the name Blair Securities Corporation, and the partners, on April 12, 1920, transferred to it cash, certain securities and other assets totaling $11,642,769.71. The securities included the $2,000,000 of preferred stock in Blair & Co., Inc., subscribed for by the partners and received on April fifth. The consideration for the transfer was the assumption by the corporation of various liabilities amounting to $4,677,493.19, plus incidental liabilities arising out of liquidation not to exceed $25,000, and the corporation's agreement to

issue its capital stock to the partners or their order. On April 12, 1920, the 100,000 shares of common stock of Blair Securities Corporation was distributed among the partners as follows: Forty-eight per cent to Blair, thirty per cent to Dennis, twenty-two per cent to Marston; the preferred stock was distributed as follows: 38,150 shares to the holders of certificates of deposit in the sum of $3,815,000 in the old firm of Blair & Co. (the holders being the partners, members of their families or former partners); 11,150 shares to Securities Investing Fund, Inc., a wholly-owned subsidiary of the old partnership, the stock of which was transferred in April, 1920, to Blair Securities Corporation.

Fifty thousand shares of the stock of International Coal Products Corporation owned by the partners were not included in the securities transferred to Blair Securities Corporation but were transferred to that corporation by March, 1921. International Coal Products had been organized in 1918 to develop a process or patent for the distillation of bituminous coal, the production therefrom of smokeless fuel, toluol, ammonia and other by-products much in demand during the World war. In May, 1918, International had made a contract with the United States under which the United States agreed to pay not exceeding $2,000,000 as the cost of constructing a plant for International, and to purchase the toluol and ammonia produced therein; and International agreed to purchase the plant from the United States for $2,000,000 in annual installment payments commencing two years from the date of its completion. That contract required a guaranty of payment of the purchase price and the United States accepted a guaranty of the partnership, Blair & Co., on which at the date of its dissolution the partners were still liable. They were also liable on various notes of International and had guaranteed Blair & Co., Inc., against loss on accounts and bills receivable purchased under the April fifth agreement. These contingent liabilities in April, 1920, totaled over $6,000,000, including a liability of $2,750,000 to the United States, the original guaranty of $2,000,000 having been increased by agreement with the government, March 1, 1920.

On August 4, 1920, Blair, Dennis and Marston entered into an agreement which recited the dissolution of the partnership; the transfer of the business to Blair & Co., Inc. (except the banking business which was transferred to a new copartnership of which none of the former partners were members); the transfer of other assets to Blair Securities Corporation; and the necessity in the liquidation of the old partnership to continue the liability of the three parties to the agreement, former members of the firm of Blair & Co., as makers, indorsers or guarantors of outstanding

obligations. The agreement provided that, until the full and complete liquidation of all the liabilities of Blair & Co., the parties to the agreement should be liable in respect of all such obligations in the following proportions: C. Ledyard Blair, forty-eight per cent; John B. Dennis, thirty per cent; Edgar L. Marston, twenty-two per cent. Each of the parties was recognized as a liquidating partner and given the right to extend, renew and settle all such obligations or make new obligations in substitution therefor with the provision, however, that " as between the parties hereto the ultimate proportionate liability of each of the parties hereto as between themselves shall remain as it was " in the partnership; namely, Blair, forty-eight per cent; Dennis, thirty per cent; Marston, twenty-two per cent.

International Coal Products Corporation opened an account with Blair Securities Corporation and concededly very substantial payments of notes of International on which the former partnership was contingently liable were made through this account. Large additional advances for International were also required and were also financed through its account with Blair Securities Corporation. Between December 16, 1921, and February 21, 1922, to meet notes upon which the former partners were contingently liable, Marston and Blair paid into the account of International with Blair Securities Corporation $2,500,000, C. Ledyard Blair paying $1,714,285.72, and Edgar L. Marston $785,714.28. On each of the occasions when any contingent liability became due each of the former partners was duly requested by the others to pay his percentage thereof. Concededly, Dennis did not pay his agreed thirty per cent of the above payments.

All outstanding contingent liabilities, however, were paid and discharged prior to March, 1922, with the exception of the guaranty of the government contract, and that guaranty was settled and discharged June 10, 1925. On this settlement with the government each of the former partners paid his correct proportionate share and agreed to pay the government one-half of 15,000 shares of the common stock of a new corporation, Cumberland Coal Products, to be organized for the purpose of acquiring the plant; in return the United States gave them or their assigns a three-year option expiring June 10, 1928, to purchase the said 15,000 shares on the payment to the United States of $1,250,000.

On February 2, 1928, C. Ledyard Blair made a settlement with John B. Dennis, which recites the payment by Dennis to Blair of $260,000 in cash and it was stipulated on the trial that the settlement was consummated by the purchase by Dennis from Blair of 1,700 shares of certain stocks of $100 par value, for a total

of $430,000. On July 16, 1929, C. Ledyard Blair made a settlement with Edgar L. Marston under the terms of which Marston paid Blair $200,000, 1,163 shares of stock in Securities Investing Fund, Inc., and certain other notes and shares of stock out of which Blair was authorized to realize a further sum of $100,000. It is to be noted that in the 1,163 shares of stock transferred by Marston to Blair was all of Marston's stock in Blair Securities Corporation, the name of which had by that time been changed to Securities Investing Fund, Inc.

After a trial at Special Term, the trial court found that there had been no accounting between the partners of the assets and liabilities of the partnership; that plaintiffs, as executors of Marston, were entitled to such accounting from defendant Dennis; that before March, 1927, no demands were made by any partner upon any other partner for a settlement of the partnership affairs and there was no dispute or controversy between the partners with respect to such transactions; that the partnership liquidation commenced in April, 1920, and proceeded without controversy until March, 1927; that the partners formed Blair Securities Corporation for convenience in liquidating partnership affairs; that its assets were in fact partnership assets used to pay partnership obligations, and it existed only as an agent or instrumentality of the partnership; that the liquidation was not completed until June, 1929, at which time Marston and Dennis had made settlement with Blair; that the cause of action for an accounting accrued in 1927, at which time Blair made certain demands upon Marston and Dennis; that the ten-year Statute of Limitations applied and the commencement of the action on December 3, 1936, was timely.

The court, however, also found that Blair Securities Corporation was at all times a validly existing corporation in which creditors and persons who had received preferred stock, other than Blair, Marston and Dennis, had a substantial interest; that upon each occasion when any contingent liability became due each of the former partners was duly requested by the others to pay his percentage; that all contingent liabilities were paid and discharged prior to March, 1922, except the guaranty of the government contract, and that was discharged by settlement on June 10, 1925.

The interlocutory judgment entered on the decision provides that defendant Dennis account to plaintiffs not only for the transactions of the former partnership of Blair & Co., but also for the assets, liabilities and transactions of Blair Securities Corporation; it directs defendant to file a verified account of all such matters, appoints a referee to take the accounts and report to the court,

500

and directs defendant to pay plaintiffs any sums which may be found due upon the account.

Appellant contends that the disposition of partnership assets in 1920, together with the distribution to the partners of the stock received therefor and the contract between them as to their percentage of liabilities, was a complete accounting; that any cause of action accrued either upon the dissolution of the partnership in April, 1920, or upon the failure of defendant to contribute his proportionate share of the two and one-half million dollars of contingent liabilities paid between December, 1921, and February, 1922; that in any event the partnership liquidation was completed and the cause of action accrued at the latest on June 10, 1925, when the last contingent liability of the partnership was discharged; and that, accordingly, the action is barred by the ten-year Statute of Limitations. Appellant also contends that the only remedy for breach of the promise to pay contained in the contract of August 4, 1920, was an action at law barred within six years after the failure to pay when requested and, assuming that a concurrent action in equity for contribution would lie, the shorter limitation applicable to actions at law controls.

Plaintiffs contend that the transactions with Blair & Co., Inc., and Blair Securities Corporation, read with the agreement of August 4, 1920, did not constitute an accounting and adjustment of partnership affairs as the partners did not then know with any degree of exactness what their claims on each other would be; that the agreement of August fourth, so far as contingent liabilities were concerned, was merely a repetition of the partnership percentages of liability; that the conduct of the partners shows they did not intend to merge their partnership affairs into the Blair Securities Corporation, but they continued the partnership for years after the formation of the corporation and used the corporation's assets in liquidating the partnership in complete disregard of the corporate entity; that all the assets of the partnership were not distributed to Blair & Co., Inc., the Blair Securities Corporation, or the new firm organized to take over the private banking business, but the partners retained the 50,000 shares of International stock which they then considered a valuable asset, though it later proved to be worthless; that this cause of action or any cause of action did not accrue in 1920, 1922 or 1925, as claimed by appellant; that no action at law will lie between partners to recover contribution for the payment of debts by one of the partners against the other until there has been an adjustment, balance struck and promise to pay; that in no event would the six-year statute apply; and finally that the trial court viewed the transactions in their sub-

stance rather than their form, and properly held Blair Securities Corporation merely an agency used by the partners in their liquidation.

We consider the record sufficiently establishes that after dissolution of the partnership all of its assets were transferred either to Blair & Co., Inc., to Blair Securities Corporation or to the new firm that was to conduct the private banking business. The memorandum of April 3, 1920, does refer only to " certain " assets and " certain " securities transferred to Blair Securities Corporation, but, concededly, numerous other assets and securities were transferred to Blair & Co., Inc. All assets not sold to Blair & Co., Inc., were acquired by Blair Securities Corporation except the right to conduct a private banking business which went to the new partnership. This is established by the agreements themselves, the entries on the partnership books, the testimony of C. Ledyard Blair, and the declaration of the three former partners. It is true 50,000 shares of International were not listed in the transfer to Blair Securities Corporation on April 3, 1920, and apparently were voted by proxy in May, 1920; but this stock was also transferred to Blair Securities Corporation and appears on its books credited to profit and loss on March 25, 1921, as follows: " 50,000 shares Int. Coal Prod. Corp., $10." C. Ledyard Blair testified as follows: " Q. There was a dissolution about April, 1920, of this partnership? A. As I recall, that was the date. Q. At the time of that dissolution what became of the assets of the copartnership, just generally, Mr. Blair? A. The assets that did not go into the new corporation, Blair & Co., Inc., were taken over by the Blair Securities Corporation." That is plaintiffs' evidence. An agreement made on March 9, 1922, between Blair & Co., Inc., on the one hand, and Blair, Dennis and Marston on the other, called therein " the individuals," begins with the following statement: " Blair & Co., Inc., upon its organization acquired certain of the property and business of the former partnership of Blair & Co. Blair Securities Corporation was organized to acquire the assets of Blair & Co. not acquired by Blair & Co., Inc." That agreement was signed by Marston, Dennis and Blair individually.

As part of the adjustment between the parties it is to be noted, and the trial court found, that on dissolution of the partnership, John B. Dennis owned certificates of deposit therein in the amount of $800,000, but was indebted to the partnership on an overdraft for $475,000. At the time of the dissolution such overdraft was paid by canceling $475,000 of certificates of deposit owned by Dennis and reducing to 3,250 shares the amount of Blair Securities Corporation preferred stock issuable to him in exchange for his

certificates of deposit. Thus, because of his overdraft of $475,000, Dennis on dissolution did not receive the $800,000 to which his certificates on their face value entitled him, but the adjustment was then made, the certificates were canceled to the extent of $475,000 and Dennis' preferred stock in Blair Securities Corporation limited to the balance only, viz., $325,000. This indicates an intention to distribute and adjust partnership assets and debts at the time.

On the record, we consider there was a distribution of partnership assets and that the former partners as individuals and not as partners became the owners of the stock of Blair Securities Corporation.

It is undoubtedly the general rule, as plaintiffs insist, that partners cannot sue each other at law for anything relating to the partnership unless there has been an adjustment, settlement or balance struck and a promise to pay. (*Arnold* v. *Arnold*, 90 N. Y. 580.) Defendant urges that the facts disclosed constituted a complete adjustment after dissolution, and when Dennis breached the contract made after dissolution, by failure to pay his agreed proportionate share when requested in 1921 and 1922, a cause of action at law then arose and the action is accordingly barred. We have examined the numerous cases relied on by both sides and consider it unnecessary to review them here. As was said in *Gray* v. *Green* (142 N. Y. 316, 321): " In all these actions between partners the application of the statute [of limitations] necessarily depends upon the circumstances of each particular case." We also consider it unnecessary to pass upon all the numerous grounds for reversal urged by appellant, as we have concluded that this judgment should be reversed since in any event the cause of action asserted arose in favor of plaintiffs' testator in June, 1925, and this action, commenced over eleven years later, is barred by the ten-year Statute of Limitations.

From the transactions outlined above, it must be clear that at least on June 10, 1925, there had been a complete liquidation of partnership liabilities. All partnership assets had been distributed. Each partner had his stock in the Blair Securities Corporation and Blair & Co., Inc. Direct obligations had been taken over by the two corporations. Contingent liabilities assumed by the partners had all been disposed of. Five and a half years had passed since the date of dissolution and the beginning of liquidation. On that date the last contingent liability was concededly satisfied. It was then known what all the contingent liabilities of the partners were upon their guaranties, in what proportions they had been met, and how much each owed the other. Whether the cause of action then arising would be one for an accounting or for con-

tribution, one at law under the contract of August 4, 1920, to enforce the proportionate share which Dennis concededly had not paid, or a suit in equity, it would be barred, having arisen more than eleven years before this suit was instituted.

In *Hutchinson* v. *Sperry* (158 App. Div. 704; affd., 214 N. Y. 616) this court held that, when copartners conveyed their entire business to a corporation in exchange for its stock divided among them *pro rata*, the partnership was dissolved and a suit for an accounting was barred by the ten-year Statute of Limitations. In that case plaintiff had severed his active connection with the business, had united with the defendant to form a corporation to take over the business, had transferred all the partnership assets to that corporation, and for ten years had never made a claim indicating that he considered the partnership still alive. In addition to sustaining the defense of the Statute of Limitations, the court held that the plaintiff's long silence, acquiescence, in all that was done on the faith of the transfer, and abandonment of all interest in the business amounted to laches sufficient to justify a court of equity in refusing to grant relief. The court said: " We are of opinion that, under the circumstances stated, the ten-year Statute of Limitations is a complete bar to the action."

While an express trust subsists and has not been openly renounced, the Statute of Limitations does not run in favor of the trustee. (*Lammer* v. *Stoddard*, 103 N. Y. 672; *Spallholz* v. *Sheldon*, 216 id. 205, 209.) Although there are elements of trust in the position of a liquidating partner, the authority given is only to the limited extent necessary to settle the business and does not create a direct trust. (*Gilmore* v. *Ham*, 142 N. Y. 1, 7). Even with regard to express trusts, after the trust relation is ended and the trustee has no longer the right to the fund or has yielded the fund to a successor, the running of the statute then begins and will be suspended only by actual or intentional fraud. (*Spallholz* v. *Sheldon, supra.*)

Here, by the agreement of August 4, 1920, all the three former partners were liquidating partners. In *Gilmore* v. *Ham (supra)* the defense of the statute was sustained, although there had been no accounting by the liquidating partner. There, the two parties to the litigation had been engaged in the clothing business in New York from 1864 to 1869, when Gilmore went away, left the State, abandoned the partnership, leaving Ham as sole liquidating partner; in 1871 Ham sold out the entire assets but did not pay a note given by the partnership in 1866 to Ham's wife, though he had ample partnership assets with which to pay it; in 1886 Ham's wife sued Gilmore alone on the note and he was compelled to pay, as the statute did not protect him because of his absence from the

State; then Gilmore sued Ham in the cited case, demanding an accounting of the partnership affairs. The facts were such as to urge the court to overrule, if possible, the defense of the statute, and the Court of Appeals said it would gladly see Ham compelled to pay, yet the court sustained the defense of the statute and held that, while it was clear that the cause of action for an accounting did not arise at the moment of the dissolution, it was not postponed to the other extreme of a complete and final ending of all partnership business or until the last item thereof is settled and closed; that the right accrues when the liquidator, under the circumstances of the particular case, has had a reasonable time within which to perform his duty, when it ought to have been fully completed and when he is at fault if it is not; that the liquidator could not leave one or more debts unpaid and hold assets in the peril of his continued solvency throughout long years, defying all equitable redress. It was held that, under the law of this State, there is a fixed limitation for every cause of action, whether legal or equitable, and that the action accrued two years after dissolution, when the assets had been sold, the debts presumably collected and all liabilities paid but the one note in question, which was due and should have been paid. The court stated it would be glad to adopt a more definite rule, but only specific legislation could do that, and, in the meantime, " in each specific case, taking into consideration all the attendant circumstances, we must determine when the cause of action accrues."

The Partnership Law subsequently enacted provides that, with regard to the accrual of actions, the right to an accounting accrues to any partner or his legal representative as against the winding-up partners or the surviving partners or the person continuing the business " at the date of dissolution, in the absence of agreement to the contrary." (Partnership Law, § 74.) Assuming, in the case before us, that the agreement of August 4, 1920, was an " agreement to the contrary," postponing that right, we think on the facts disclosed that the right arose when the last outstanding liability was met in 1925 when the liquidation was complete, after it had continued for over five years. The business had then been so far settled as to demonstrate the need of contribution and indicate the amount required.

The trial court herein found that the liquidation begun in 1920 was not completed until 1929 because by that date both Marston and Dennis had made settlement with Blair. But obviously the fact that Blair did not complete settlements with his two former partners until 1929 does not establish that the liquidation was not completed until then. Blair had made demands for final settlement

long before in 1927. He testified he made the demands when he thought the parties were in a position to repay what he had advanced on account of their respective share of liabilities. He could have made these demands at any time after June 10, 1925. That he waited until 1927 or 1929 is not conclusive. The time from which the right accrued is controlling.

The judgment entered against defendant requires him to account not only for the affairs of the old partnership, Blair & Co., but also for all the affairs, transactions, assets and liabilities of Blair Securities Corporation. That direction must rest on two assumptions: (1) That the stock of Blair Securities Corporation distributed to the three partners was not distributed to them as individuals but as partners (for it is only as a partner that Dennis is called upon to account); and (2) that Blair Securities Corporation had no valid corporate existence of its own.

The first assumption is inconsistent with the manner in which the plaintiffs' testator, Marston, dealt with his own shares of Blair Securities Corporation stock. In his settlement with Blair, Marston disposed of all his shares in that corporation as his own, whereas if he held the stock as a partner he could not thus deal with it. Although plaintiffs' testator has thus dealt with his own stock as an individual, his executors now require Dennis, another partner, to account for the transactions of Blair Securities Corporation as though Dennis' interest therein was solely that of a partner. Marston's action in dealing with his stock as he did was on the assumption that he had changed his former status as a partner into that of a stockholder in Blair Securities Corporation. His executors are in no position to claim that this is not so as to Dennis but that Dennis must account to them as a partner for *his* interest in the same corporation.

The second assumption, that the corporation had no valid existence, is at variance with the court's finding of fact that " Blair Securities Corporation was at all times a validly existing corporation and that creditors and persons who had received preferred stock, other than C. Ledyard Blair, Marston and Dennis, had a substantial interest." With the above-quoted finding of fact undisturbed the court could not properly find as a conclusion of law that the " Blair Securities Corporation existed *only* as an agency or instrumentality of the partnership." (Italics ours.) The corporation was used as an agency in the process of liquidation but it was not a mere instrumentality. The quoted conclusion of law in effect denies the validity of the corporation whereas the court previously had found that the corporation was a validly existing entity separate from the partnership with creditors and other

persons interested. The books indicated that 31,900 shares of the preferred stock of Blair Securities Corporation were issued to persons other than the three former partners. Without proof that the corporation was used as a mere department or instrumentality of the partnership to perpetrate fraud or some other breach of duty, the corporate veil could not be pierced. (*Lowendahl* v. *B. & O. R. R. Co.*, 247 App. Div. 144; affd., 272 N. Y. 360.)

There are some vague suggestions in plaintiffs' brief regarding a fraudulent purpose. Thus, plaintiffs ask whether the partners were trying to put themselves and their families in a position over other creditors. Here, as throughout the consideration of this case, it must be remembered that claims of third parties or creditors are not involved; the suit is between the two former partners (or their representatives) and their rights as between themselves. Irrespective of this, the suggestion of a fraudulent purpose on the part of plaintiff's testator for himself and his family obviously may not serve as the basis of any claim by his executors against this defendant. Plaintiffs' suggestion, in addition to being wholly gratuitous and irrelevant, is also groundless and without support in the record, as there is no proof that the claim of any partnership creditor was not met and discharged.

Plaintiffs finally urge, as proof that the partnership continued, the option to purchase half the stock of the Cumberland Coal Products Corporation given by the government settlement in June, 1925. They point out that the three former partners are characterized in that agreement as " members of the copartnership of Blair & Co., as constituted at the time of the execution of the agreements of guaranty herein referred to (hereinafter sometimes called the ' guarantors '), parties of the third part." Plaintiffs rely on this to show there was continuance of the partnership and a valuable partnership asset not accountable for until the expiration of the option on June 10, 1928. But the quotation describing the parties to the agreement is not a subscription to the agreement over their names but a description or identification of the parties in the first paragraph of the agreement. It accurately describes them as members of the partnership " as constituted " when the original guaranty was made which was long before the dissolution of the partnership. That agreement of June, 1925, was not signed or executed by Blair, Dennis and Marston as copartners, nor in the name of the copartnership; it was signed by the three as individuals. As the agreement was executed by them individually, the option was to them as individuals and not as members of a partnership then dissolved and out of business for over five years. There is nothing to show the option was of any value or ever acted upon,

and after the last liability had been liquidated it could not have prevented an exact statement and determination of mutual rights and obligations.

Plaintiffs' testator, Marston, lived for ten years after the final act of liquidation on June 10, 1925. He was fully conversant with the partnership affairs. He knew how the partnership assets had been distributed and how its liabilities had been assumed and met. He knew in what proportion and in what exact amounts they had been paid by each of the parties. He himself in 1929 had made a full settlement with Blair. But during the whole of that period, for over ten years from June 10, 1925, to his death on September 23, 1935, he did not institute any action against Dennis. Such failure to act on his part was, of course, his right and his privilege and must be deemed to have been deliberate since it was done with full knowledge of the facts. In the light of all the facts and circumstances disclosed, his executors eleven years after that final act of liquidation and sixteen years after the dissolution of the old partnership may not resurrect a stale claim and require defendant to make in 1939 a complete accounting of transactions dating back nearly twenty years.

The conclusions at which we have arrived necessitate not only a reversal of the judgment appealed from but a dismissal of the complaint. The judgment should be reversed, with costs, and the complaint dismissed, with costs.

MARTIN, P. J., GLENNON and CALLAHAN, JJ., concur.

Judgment unanimously reversed, with costs, and the complaint dismissed, with costs. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.