## MILLER v. NATIONAL CITY BANK OF NEW YORK et al.

District Court, S. D. New York.
Nov. 15, 1946.

Milton Paulson, of New York City (Abraham L. Pomerantz and William E. Haudek, both of New York City, of counsel), for plaintiff.

Shearman & Sterling & Wright and McClellan & Shrewsbury, all of New York City, for defendant National City Bank.

Davis, Polk, Wardwell, Sunderland & Kiendl, of New York City (Ralph M. Carson, of New York City, of counsel), for Guaranty Trust Co.

RIFKIND, District Judge.

Defendant Guaranty Trust Company moves for summary judgment dismissing the amended complaint on the grounds of (1) res judicata and (2) statute of limitations. Federal Rules of Civil Procedure, rule 56, 28 U.S.C.A. following section 723c.

The motion is made before answer. Rule 56(b).

The claims against Guaranty are declared in two alternative counts. Rule 8 (e) (2).

The first count, after setting forth diversity of citizenship as the basis of jurisdiction, alleges as follows: In June, 1916, and during the several months prior thereto, a group of five banks (hereinafter called "Banking Group"), including Guaranty and National City Bank, was negotiating with the Imperial Government of Russia the terms of a credit to be extended by the Banking Group to Russia. On June 14, 1916, before the agreement was actually made, the Banking Group addressed a written offer to the public inviting it to subscribe for a participation in the proposed business.

The offering stated that the Banking Group was arranging a credit in New York in favor of the Imperial Russian Government, not to exceed $50,000,000 in amount, to be retired within three years, with interest at the rate of 6½% per annum. It further stated that the Banking Group would have under its agreement certain options to purchase rubles and bonds from the Russian Government. The net profits from the resale of the rubles or bonds would be distributed ratably among the participants in the credit upon final settlement of the account. The Banking Group, being compensated by the Russian Government, would make no charge to the participant. In all matters of discretion the decision of a majority of the Banking Group was to be conclusive upon the participants.

In response to this offering, and on or before June 18, 1916, the Banking Group received and accepted from the public subscriptions and payments in the full amount of the credit, namely, $50,000,000. Plaintiff was an original subscriber, paid $5,000 and was allotted a participation in that amount.

Upon receipt of the money from the participants the Banking Group entered into an agreement with the Russian Government dated June 18, 1916. Under the terms of this agreement, the Banking Group was to open, for a period of three years, a credit of $50,000,000 in favor of Russia. This sum was to be deposited with the National City Bank. During the term of the credit, Russia could withdraw all or part of that fund but only for expenditure in America. After three years, namely, on June 18, 1919, Russia was to refund the amount of the credit actually used by it. Interest was payable at the rate of 6½% per annum. An additional 1% was payable by Russia to the Banking Group as its commission. To afford an opportunity for profit, Russia granted the Banking Group options to buy specified amounts of rubles and Russian bonds at designated prices. Upon exercise of either option the Banking Group was to credit the price to Russia by deducting it from Russia's indebtedness under the quoted agreement. Profits realized by the Banking Group upon the resale of the rubles or bonds were to be divided between Russia and the Banking Group.

On July 10, 1916, three weeks after the execution of the quoted agreement, the Banking Group made the credit actually available for withdrawal by Russia. For that purpose Guaranty and National City Bank each opened an account for $25,000,000. The Guaranty account was desig-

nated Section Etrangere du Ministere des Finances de Russie. Russia was so advised on that day.

Thereafter, in January 1917, the Banking Group issued participating certificates to the participants in the Russian credit, which provided in part as follows: The participants are entitled to a ratable distribution of all sums received by the Banking Group, on account of principal and interest, and, on final settlement of the account, to a ratable distribution of the net profits, if any, arising in the liquidation of the credit, and in any transaction involving the sale of rubles or Russian bonds. Where the exercise of discretion is required, the decision of a majority of the Banking Group shall be conclusive on the participants. The Banking Group assumes no personal liability to the certificate holder. No rights of any kind shall accrue to the holder except the right to share pro rata in the aforementioned distributions.

From July 10, 1916, when the credit was opened, to November 7, 1917, Russia from time to time drew upon the credit and made payments on account thereof. On November 7, 1917, there remained a balance of about $5,000,000 in the credit account at Guaranty available for withdrawal by Russia. It is this sum which is the subject of this suit.

On or about November 7, 1917, the Soviet Government overthrew the Czarist Regime and repudiated Russia's foreign debt, including its obligation to repay the sums due under the credit agreement. By reason thereof, Russia lost the right to make further withdrawals from the credit account at Guaranty, and it was so noted by Guaranty on the face of the account.

Guaranty appropriated the aforesaid $5,-000,000 to its own use, under the following circumstances. Guaranty allegedly had claims against several private banks in Russia for about $9,000,000. Collections became impossible because of the expropriatory decrees of the Soviet Government. In February, 1918, Guaranty opened, without Russian authority, a new account in the name of the "Russian Government". Simultaneously, it closed its Section Etrangere account, transferred the balance then appearing therein of $5,000,-000 to the new Russian Government account. At the same time Guaranty debited this new account with $9,000,000 purportedly representing the indebtedness of the private Russian banks to Guaranty. Then Guaranty purportedly set off the former sum against the latter.

In June, 1919, Russia defaulted in the principal of the credit, and the last interest installment due thereon. The Banking Group nevertheless continued to act for the participants by conducting negotiations with authorities in this county and abroad, looking toward collection of the indebtedness from Russia. In July, 1919, the Banking Group caused to be organized a committee purportedly for the participants' protection. The committee, which consisted of seven members, five of whom were executive officers of members of the Banking Group, was dominated in its actions and negotiations by the Banking Group. The committee continued to act until October, 1938.

To date the Banking Group has failed to account to the participants for their activity.

The second count of the complaint states that on November 7, 1917, Russia's indebtedness under the quoted agreement was $50,000,000. At that time Guaranty was indebted to Russia in the sum of approximately $5,000,000. Guaranty was requested by Russia to apply this latter debt to the satisfaction in part of Russia's indebtedness to the Banking Group. By doing so Guaranty would have made the $5,000,000 available for distribution to the participants. Guaranty, however refused to do so. Instead, it availed itself of the set-off device described in the first count.

Copies of the offering of June 14, 1916, the credit agreement with the Minister of Finances of the Russian Empire of June 18, 1916 and plaintiff's participating certificate are annexed to the amended complaint.

The moving affidavits recite: This action was commenced on March 13, 1942. On June 18, 1945, the Supreme Court of the United States decided Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231. On June 26,

1945, plaintiff served the amended complaint. No answer has ever been filed. In addition to the instant action, five actions have been commenced against the defendant Guaranty in the Supreme Court of the State of New York and have been disposed of as follows: (a) Milton I. Milvy v. Guaranty Trust Co. of New York et al., commenced in Westchester County, November 14, 1941, and dismissed by the Special Term of the Supreme Court on the ground of the statute of limitations on April 22, 1942; (b) Aimee S. Guggenheim v. Guaranty Trust Co. of New York, commenced in New York County on November 1, 1941, and dismissed on November, 26, 1943, on the ground of the statute of limitations; (c) Francis de Paolo v. National City Bank of New York, Guaranty Trust Co. of New York et al., commenced in New York County on November 28, 1941, and discontinued on March 9, 1942; (d) Bernard Miller v. Guaranty Trust Co. of New York et al., commenced in New York County on March 16, 1942 and dismissed on June 16, 1942, on the ground of the statute of limitations; (e) Mortimer H. Julian v. Lee Higginson Corporation, J. P. Morgan & Co., Inc., Guaranty Trust Co. of New York, et al., commenced in New York County on April 2, 1942, and dismissed on June 16, 1942 on the ground of the statute of limitations.

The Bernard Miller mentioned in (d) above is the same Bernard Miller who is the plaintiff in the instant action. The affidavits filed by defendant Guaranty in support of its motion to dismiss the Miller action in the New York Supreme Court are reiterated for the purposes of the pending motion. Copies of the judgment rolls in the Guggenheim action [(b) above] and in the Miller action [(d) above] are annexed to the affidavits.

The answering affidavit is submitted by plaintiff's attorney, who states:

"The gist of the amended complaint is that, on June 18, 1916, a group of five banks, including Guaranty and City Bank, contracted with the Imperial Russian Government to grant it a three-year credit, not to exceed $50,000,000. None of the members of the Banking Group advanced a dollar of its own. For, even before entering into its agreement with Russia, the Banking Group had raised the entire $50,000,000 from the public through subscriptions. Each subscriber was awarded a participation in the credit. Plaintiff is the original holder of a $5,000 participation. Of the original public investment of $50,000,000, Guaranty still holds an unexpended portion of about $5,000,000. That sum, belonging to the participants, Guaranty has appropriated. Plaintiff sues representatively to compel defendant to account. Defendant Guaranty and City Bank are the only remaining defendants. The others were either not served or were dismissed by discontinuance."

The affidavit supplies additional information concerning the five actions mentioned in the moving affidavit, and annexes copies of various affidavits and communications, reference to which may be deferred. Since both legs of Guaranty's motion stand upon the Miller case in the New York Supreme Court, a comparison with that case must be the foundation of decision. Plaintiff makes such a comparison in his brief. He says:

"1. The Milvy, Miller and Julian cases:

The complaints in these cases were substantially similar to each other. Like that at bar, they charged the defendants with a breach of trust. But the trust was there predicated upon an agreement and a factual setting quite different from that here alleged.

"The complaints in the Milvy, Miller and Julian cases stated that the defendants had first made their credit agreement with Russia; had actually established the credit with their own funds; and had then sold participating certificates to the plaintiff and others. The certificates were invoked as the original contract setting forth the terms of the agreement between the defendants and the participants. The certificates, it was claimed, gave rise to the trust.

"The present amended complaint, based on the documentary evidence, tells a different story. Defendants advanced not a dollar of their own. Even before contracting with Russia, they made a written offering to the public, on the strength of which they received subscriptions and payments aggre-

gating the full $50,000,000. Only after receipt of this sum did the defendants execute the credit agreement with Russia on June 18, 1916; three weeks later they actually established the credit. The participating certificates were not issued until seven months thereafter, in January, 1917; they were not part of the contract, but were only intended as evidence thereof.

"2. The contracts alleged here and in the state court complaints differ thus in two respects: (a) The contract between defendants and the participants, as alleged in the State Court complaints, was embodied in the participating certificates; whereas the present complaint finds the contract in defendants' 'written offering' accepted by the subscribers; (b) the State Court complaints alleged that the plaintiff's 'bought' a participation in a credit already established with defendants' money; whereas the present complaint asserts that plaintiff and the other subscribers entrusted their moneys to the defendants for use in establishing the Russian credit."

▮ In the New York Supreme Court defendant Guaranty moved for judgment dismissing the complaint on the ground that the claim alleged was barred by limitation. That motion was made under Rule 107 of the New York Rules of Civil Practice. A motion under that rule is not in the nature of a demurrer, as plaintiff contends, but is akin to a motion for summary judgment under the Federal Rules of Civil Procedure. Shipley v. Schmitzer, First Dept., 1928, 224 App.Div. 730, 229 N.Y.S. 915. Rule 107 of the New York Rules permits the use of affidavits, and both plaintiff and defendant Guaranty took advantage of that privilege in the Miller Case in the Supreme Court. In these affidavits filed in opposition to defendant's motion to dismiss the New York complaint, plaintiff brought to the attention of the Supreme Court the bankers' offering of June 14, 1916. The motion was granted by Mr. Justice Shientag. 67 N.Y.S.2d 76.[1] The order directed dismissal "on the merits" upon the ground of the statute of limitations. Judgment was entered accordingly and was affirmed by the Appellate Division without opinion; 265 App.Div. 1040, 39 N.Y.S.2d 1002. Leave to appeal to the Court of Appeals was denied both by the Appellate Division and the Court of Appeals; 266 App.Div. 656, 41 N.Y.S.2d 198, 291 N.Y. 829, 50 N.E.2d 555.

▮ Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231, has established the rule that in diversity cases a federal court is governed by the applicable state statute of limitations. The federal court is required to apply the statute in the manner in which the state courts apply it. Much can be said for the plaintiff's contention that the defendant became trustee of an

---

[1] Mr. Justice Shientag's opinion reads as follows:

"No express trust was established under the terms of the agreements entered into by the various parties. The defendants are not express trustees of a subsisting trust. There is an absence of all of the essential elements to be found in a trust of personal property (Brown v. Spohr, 180 N.Y. 201, 73 N.E. 14; Gilmore v. Ham, 142 N.Y. 1, 36 N.E. 826, 40 Am.St.Rep. 554). The rights arising out of the agreements were contractual in nature.

" 'Even with regard to express trusts, after the trust relation is ended and the trustee has no longer the right to the fund or has yielded the fund to a successor, the running of the statute then begins and will be suspended only by actual or intentional fraud.' Bankers Trust Co. v. Dennis, 256 App.Div. 495, 503, 10 N.Y.S.2d 710, affirmed 282 N.Y. 635, 25 N.E.2d 981. The allegations of the complaint show that plaintiff's right to sue the defendants for any alleged breach of their obligation accrued as early as June 18, 1919. Mills v. Mills, 115 N.Y. 80, 85, 21 N.E. 714; see also Model Bldg. & Loan Ass'n of Mott Haven v. Reeves, 236 N.Y. 331, 140 N.E. 715; Keys v. Leopold, 241 N.Y. 189, 149 N.E. 828. Whether the six-year statute (sec. 48, C. P.A.) or the ten-year statute (sec. 53, C.P. A.) applies, the causes of action are barred. Section 15 of the Civil Practice Act has no application. Tillman v. Guaranty Trust Co., 253 N.Y. 295, 171 N.E. 61; Glover v. National Bank of Commerce, 156 App. Div. 247, 141 N.Y.S. 409. The motion to dismiss the complaint is granted. Settle order."

express trust for the benefit of plaintiff;[2] that the claim is governed by the rule that "while an express trust subsists and has not been openly renounced, the statute of limitations does not run in favor of the trustee." Spallholz v. Sheldon, 1915, 216 N.Y. 205, 209, 110 N.E. 431, 432, Ann.Cas. 1917C, 1017; Manufacturers Trust Co. v. Kelby, 2 Cir., 1942, 125 F.2d 650, 654, certiorari denied 316 U.S. 697, 62 S.Ct. 1293, 86 L.Ed. 1766. Whether, in the instant case, such a renunciation or repudiation has occurred is an issue of fact which cannot be adjudicated summarily. This much at least the answering affidavits make clear.

But the pursuit of such an inquiry into the New York Law of Trusts and the bearing thereon of the Statute of Limitations would be a futile enterprise if it yielded an answer which was inconsistent with Miller v. Guaranty Trust Co. of New York as decided by the New York courts. Laying aside the question of res judicata, it is clear that Judge Shientag's decision is very much "in point". Indeed, it is "on all fours" except for one difference. In the New York case plaintiff alleged that he had paid for his participation after the bankers had established a credit in favor of Russia; in the instant case, that he paid before the credit was established. I call that the only difference because, as indicated, on the motion to dismiss, the Supreme Court had before it the offering of June 14, 1916. After considerable reflection, and some reluctance, I have come to the conclusion that if New York law barred the former claim it must logically bar the latter.

The agreements in the two cases are identical. The offering of June 14, 1916, was conspicuously placed before the state court in plaintiff's affidavits. The opinion of Mr. Justice Shientag speaks of agreements in the plural and undoubtedly embraces the certificate and the offering. All the considerations which can be relied upon to establish an express trust in the instant case were present in the New York case. All the factors which can be relied upon to impose fiduciary duties in the instant case were present in the New York case.

Plaintiff is not unaware of the peril of his position and, therefore, suggests that this court disregard the New York case as evidence of New York law on the ground that it is a decision of a court of first instance. Fidelity Union Trust Co. v. Field, 1940, 311 U.S. 169, 177, 61 S.Ct. 176, 85 L.Ed. 109; West v. American Telephone & Telegraph Co., 1940, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956; Six Companies of California v. Joint Highway District, 1940, 311 U.S. 180, 188, 61 S.Ct. 186, 85 L.Ed. 114; Stoner v. New York Life Insurance Co., 1940, 311 U.S. 464, 467, 61 S.Ct. 336, 85 L.Ed. 284; Vandenbark v. Owens-Illinois Glass Co., 1941, 311 U.S. 538, 543, 61 S.Ct. 347, 85 L.Ed. 327. Moreover, he attributes no weight to the affirmance by the Appellate Division on the ground that it was without opinion. Erie R. Co. v. International R. Co., 1924, 209 App.Div. 380, 384, 204 N.Y.S. 771, affirmed 239 N.Y. 598, 147 N.E. 211; Adrico Realty Corp. v. City of New York, 1928, 250 N.Y. 29, 44, 164 N.E. 732, 64 A.L.R. 1. Plaintiff is clearly right when he attaches no significance to the denial of leave to appeal by the Court of Appeals. Marchant v. Mead-Morrison Mfg. Co., 1929, 252 N.Y. 284, 297, 169 N.E. 386. But the affirmance by the Appellate Division cannot be so readily brushed aside. True it is that affirmance without opinion does not carry implied approval of the reasoning by which the lower court reached its decision. Here, however, we are not attempting to adapt the reasoning of a state court from one set of facts to another. We are concerned only with a decision. Since all the facts except the one already mentioned are identical we still have a decision from an intermediate appellate court that the claim to which that set of facts gives rise is barred by limitations. We may remain in doubt whether that court thought that no trust was in-

---

[2] Restatement, Trusts, Secs. 12(g) (h); Scott, The Law of Trusts, 1941–1945 (1945) 59 Harv.L.Rev. 157, 159, 160; Barry v. Lambert, 1885, 98 N.Y. 300, 307, 50 Am.Rep. 677; Rossman v. Blunt, 6 Cir., 1939, 104 F.2d 877, 879; or of powers in trust, Matter of Brooklyn Trust Co., S.Ct. Kings County, 1936, 163 Misc. 117, 126, 128, 295 N.Y.S. 1007.

volved or whether, if there were a trust, the claim was nonetheless barred. But there can be no doubt that it ruled the claim emerging from the facts alleged in the complaint and affidavits was subject to dismissal on motion by reason of limitations.

The Supreme Court [311 U.S. 223, 61 S.Ct. 183] has opened one door for departure from the decision of an intermediate appellate court—where the federal court is "convinced by other persuasive data that the highest court of the state would decide otherwise." West v. American Telephone & Telegraph Co., supra. However, in the several decisions rendered by the other justices of the State Supreme Court which brought to an end related efforts by participants to enforce claims arising out of this transaction, we find no suggestion of disagreement with the decision reached in the New York Miller case. Such general concurrence by experienced New York trial judges tends to erase the hope that there is in existence "persuasive data" that the Court of Appeals would decide otherwise.

■ I am unable to discover any rational basis for distinguishing a case in which payment was made by the plaintiff for his participation before June 18, 1916, from one in which payment was made thereafter. Certainly the parties did not contemplate any difference in relationship depending upon whether payment was made before the formal signature of the agreement with the Russian Empire or shortly thereafter. I am unable to visualize a system of law which would attach different legal consequences to the relationship of the buyer who paid for his participation on June 17th and the buyer who paid for his participation on June 19th. Perhaps, if the decision of the New York court were shocking, this slight difference would serve as a convenient excuse for departing from the rule as announced by the New York courts. But with respect to decisions governing the statute of limitations it would be very difficult to imagine a situation which could be called truly shocking, especially with respect to a transaction which had its being in the period 1916 to 1919. I am unable to contrive a system of reasoning by which a state court could arrive at a decision in this case which was different from the decision reached in the Miller case without a change of the rule previously announced by it. Such a change of rule a federal court is not free to make under Erie R. R. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

Even if I were to attach considerably greater weight to plaintiff's argument that there is a second major difference between the two complaints, namely, that in this case reliance is had upon the offering as the basic contract and not upon the certificate, the result, nevertheless, would be the same. Close inspection fails to expose any significant differences between those two instruments. The two are in complete harmony and substantially identical. The disavowal of personal liability in the certificate is implicit in the public offering. Manifestly it does not imply lack of responsibility for any liability created by the instrument itself, but asserts a lack of liability for Russia's obligation.

■■ For the foregoing reasons I am constrained to hold that the complaint against Guaranty must be dismissed because the claims alleged against it are barred by the statute of limitations. Under the circumstances it is unnecessary to decide whether the complaint also succumbs to the plea of res judicata.

Defendant National City Bank moves for the dismissal of the amended complaint under Rules 56 and 12 of the Federal Rules of Civil Procedure on five grounds, to wit, (1) res judicata; (2) statute of limitations; (3) failure to state a claim upon which relief can be granted; (4) that defendant is entitled to judgment as a matter of law and that there is no genuine issue concerning any material fact (summary judgment); (5) want of jurisdiction, in that the requisite jurisdictional amount is not involved.

The third and fourth counts, in the alternative, are addressed to this moving defendant. The third count alleges: By reason of the allegations of count one the participants acquired a claim against Guaranty of which National City had knowledge. In or about 1919 National City and others entered into a conspiracy to cause the claim to be destroyed by the running

of the statute of limitations. Pursuant to the conspiracy, the members thereof informed the participants that the Russian Government had withdrawn the entire principal amount of the credit; that the Russian Government had made no payment on account of the principal of the credit; and that the entire principal amount of the credit was in default. These representations were false, to the knowledge of those who made them. In reliance upon these representations, the participants, including plaintiff, failed to seek redress for Guaranty's misappropriation and thereby the claim against Guaranty was barred by limitations. The participants, including plaintiff, did not discover the alleged fraud until less than six years before the filing of the amended complaint.

The fourth count, also addressed to this defendant, alleges: By reason of the allegations of count two of the complaint the participants acquired a claim against Guaranty. National City and others entered into a conspiracy to cause the claim to be destroyed by limitations. In pursuance of the conspiracy the members thereof advised the participants, including plaintiff, that all members of the Banking Group had faithfully performed their fiduciary duties. These representations were false and known to the makers to be false. The participants, including plaintiff, in reliance on the representations, failed to seek redress for Guaranty's breach of duty until the claim was barred by limitation. The participants, including plaintiff, did not discover the fraud until less than six years before the filing of the amended complaint.

■ 1. Res judicata cannot avail the defendant. No such claim of fraud as is alleged in the third and fourth counts was made in the New York Miller action or in any of the other actions arising out of this transaction. A different claim of fraud was made in the Guggenheim action; but this defendant was not a party thereto. Nor does the rule that a judgment is final and conclusive as to questions which the parties might have litigated, Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp., 1929, 250 N.Y. 304, 165 N.E. 456, aid this defendant, Brick v. Cohn-Hall-Marx Co., 1940, 283 N.Y. 99, 27 N.E.2d 518.

2. The papers are not sufficient to warrant summary dismissal on the ground that the claims are barred by limitation. The cases relied on by defendant go no further than to hold that concealment and misrepresentation by the one liable, causing the injured party to allow the statute of limitations to run, will not give rise to a new cause of action for fraud which escapes the bar of the statute. Brick v. Cohn-Hall-Marx, 1937, 276 N.Y. 259, 11 N.E.2d 902, 114 A.L.R. 521; Cohen v. City Co. of New York, 1940, 283 N.Y. 112, 27 N.E.2d 803; Adolf Gobel, Inc. v. Hammerslough, 1941, 263 App.Div. 1, 31 N.Y.S. 2d 23, affirmed 288 N.Y. 653, 42 N.E.2d 746; Lever v. Guaranty Trust Co., 1941, 262 App.Div. 1044, 30 N.Y.S.2d 532, affirmed 289 N.Y. 615, 43 N.E.2d 837; Pollack v. Warner Bros. Pictures, Inc., 1943, 266 App.Div. 118, 41 N.Y.S.2d 225. Cf. Desmaris v. People's Gas Light Co., 1919, 79 N.H. 195, 107 A. 491. In the instant complaint something quite different is alleged: that defendant and others by practicing a fraud upon plaintiff, caused him to lose his claim against the third party, Guaranty.

■ For purposes of this motion I read the complaint as plaintiff contends it should be read, as alleging a claim against defendant National City of which "fraud is the sine qua non of recovery." As such it is governed by § 48(5) of the New York Civil Practice Act and the claim is not deemed to have accrued until discovery of the facts constituting the fraud. When such discovery occurred cannot be determined from the conflicting affidavits. It presents a triable issue.

■ 3. The motion challenges the sufficiency of the complaint. In support of its challenge defendant cites three cases, Reno v. Bull, 1919, 226 N.Y. 546, 550, 124 N.E. 144; Continental Ins. Co. v. Mercadante, 1925, 126 Misc. 263, 212 N.Y.S. 756; affirmed 218 App.Div. 755, 218 N.Y.S. 721; Druckerman v. Harbord, Sup., 1940, 31 N.Y.S.2d 867, 871; and it argues that plaintiff is suing National City because National City did not sue Guaranty. Manifestly, defendant misreads the complaint; and the cited cases are of no aid to its position. The complaint clearly alleges representation, falsity, scienter, reliance

and injury. Reno v. Bull, supra, Alexander v. Anderson, Sup., 1943, 48 N.Y.S.2d 102, affirmed 267 App.Div. 984, 48 N.Y.S.2d 801; Lifshutz v. Adams, 1941, 285 N.Y. 180, 185, 33 N.E.2d 83. These cases are authorities for the proposition that a complaint which alleges these elements states a claim upon which relief can be granted.

4. The prayer for summary judgment, in the context of the rest of the motion, is most logically read as pre-supposing a sufficient complaint of which the court has jurisdiction. In order to succeed in this branch of the motion it must clearly appear from the papers submitted that there is no genuine issue as to any material fact and that National City is entitled to judgment as a matter of law.

 Clearly there are issues with respect to the allegations of the complaint. The only other road for judgment for defendant is by way of the statute of limitations. To prevail upon that issue it must appear that discovery of the facts constituting the alleged fraud occurred more than six years before the commencement of the action. Upon the trial the burden of showing when the facts constituting the fraud were discovered is upon the plaintiff. Shultz v. Manufacturers and Traders Trust Co., D.C.,W.D.N.Y.1941, 40 F.Supp. 675, 686, affirmed 2 Cir., 128 F. 2d 889, certiorari denied 317 U.S. 674, 63 S.Ct. 79, 87 L.Ed. 541; Mason v. Henry, 1897, 152 N.Y. 529, 539, 46 N.E. 837. But "on a motion for a summary judgment the burden of establishing the nonexistence of any genuine issue of fact is upon the moving party, all doubts are resolved against him, * * *." Walling v. Fairmont Creamery Co., 8 Cir., 1943, 139 F.2d 318, 322; Standard Rolling Mills, Inc., v. National Mineral Co., D.C.E.D.N.Y.1942, 2 F. R.D. 236, 237. This burden the defendant has not sustained.

 5. Another, and more substantial, ground for defendant's motion is that the court is without jurisdiction because the jurisdictional amount is not involved in the controversy. What has been said of the nature of the claim against National City, in considering the second ground of its motion, is relevant to the disposition of

this ground. Fraud is the gravamen of the action. So the plaintiff argued in resisting the motion to dismiss on the ground that the action was barred by the statute of limitations. The damages suffered by plaintiff by reason of the fraud is approximately $500. True, plaintiff in his prayer for relief asks for an accounting and not for damages. The prayer, however, does not necessarily determine the character of the claim. City of Syracuse v. Hogan, 1923, 234 N.Y. 457, 461, 138 N.E. 406; Parker State Bank v. Pennington, 8 Cir., 1925, 9 F.2d 966, 970. The gist of that claim is that defendant, by means of fraudulent representations, deceived plaintiff into inaction, thus causing the claim against Guaranty to die of limitations. The wrong committed by National City is thus quite independent of the additional and different wrong committed by Guaranty. The consequence of such a wrong is that the tort feasor is answerable in damages. It does not, like a surety, become liable for Guaranty's misconduct.

In Hackner v. Guaranty Trust Co., 2 Cir., 1941, 117 F.2d 95, 97, certiorari denied 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520, the court said:

"The claim here stated is for misrepresentation, whereby the plaintiffs were induced to make a sale of their notes for less than their true value. Clearly, each plaintiff, to prevail, must show that he himself was misled by the defendants' misrepresentation, and that as a result he sustained a loss."

If this rule is applicable to the instant case, the court is without jurisdiction.

 Plaintiff contends that the Hackner case does not govern the complaint herein. He attempts to maintain that position by asserting that (a) the property out of which City Bank defrauded the participants, i.e., the claim against Guaranty, did not belong to anyone of them individually, but was their joint property, and (b) it is not necessary to show that each member of the class was misled by the misrepresentations. In support, plaintiff argues that, by causing the statute to run against a claim belonging jointly to all the participants, defendant breached its fiduciary duty owing to all participants.

'Herein plaintiff succumbs to a confusion of terms by transferring his argument to a new, territory. By his complaint plaintiff has chosen to sue defendant for fraud, and has pleaded all the elements of an action in deceit. It made this selection, presumably, to secure the advantage of § 48(5) of the New York Civil Practice Act. The allegation of the fiduciary relationship of the defendant is, in such an action, not crucial to the statement of a claim. Its significance is of a lower order in that it may subject the defendant to a duty to speak, breach of which may amount to misrepresentation. Kershaw v. Julien, 10 Cir., 1934, 72 F.2d 528, 530; Restatement, Torts, § 551. But it is the misrepresentation which remains the crux of the claim as framed, not the breach of fiduciary duty. No other theory can offer an explanation for the inclusion, in this meticulously prepared complaint, of the allegations of representation, falsity, scienter, reliance and damage.

Plaintiff, in his brief, concedes that "City Bank's position would be correct if these counts stated causes of action at law for fraud and deceit. In that event aggregation of the claims of the class members would indeed be inappropriate under the rule of Hackner v. Guaranty Trust Co." A reading of the third and fourth counts reveals nothing other than an action for fraud.

The crucial question which emerges is this: On claims for damages resulting from fraudulent misrepresentations, where the misrepresentations related to a common fund which belonged to all the certificate holders, and where such misrepresentations resulted in the loss of such fund, is the amount in controversy to be measured by the fund alleged to have been lost, or is it to be measured only by the amount of plaintiff's individual damage, which was less than $3,000? Hackner v. Guaranty Trust Co. does not quite answer this question. Nor does Ayer v. Kemper, 2 Cir., 1931, 48 F.2d 11, certiorari denied Union Trust Co. of Rochester v. Ayer, 284 U.S. 639, 52 S.Ct. 20, 76 L.Ed. 543. Clearly, Miller v. National City Bank, 2 Cir., 147 F.2d 798, does not dispose of this question.

In an action for deceit, those members of the class who were not deceived could not recover,. Whether any one participant was deceived necessarily depends upon proof relating to him. Although the misrepresentation related to a common fun in which each participant was jointly interested, this action is not for the recovery of such a fund, but for damages caused to the participant by the misrepresentation. The misrepresentation gives rise to a cause of action personal to each participant to whom the alleged misrepresentation was made, and who, in return, relied thereon to his detriment.

At best, we have here a situation where a common question of law and fact is involved, producing a class action in the "spurious" sense. Hackner v. Guaranty Trust Co., supra, at page 98 of 117 F.2d. It follows that the third and fourth counts of the amended complaint must be dismissed for lack of jurisdiction.